UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SAMSON NYLANDER,

                        Petitioner,

  —against—

JOSEPH T. SMITH, Superintendent,

                        Respondent,
------------------------------------------------------------X

**MEMORANDUM AND ORDER**

07-CV-0457 (SLT)

**TOWNES, United States District Judge:**

Samson Nylander ("Petitioner"), who is incarcerated pursuant to a judgment of the New York State Supreme Court, Kings County, petitions this Court for a writ of habeas corpus under 28 U.S.C. § 2254. Appearing *pro se*, Petitioner challenges his December 18, 2002, conviction for murder in the second degree on two grounds: (1) the evidence was legally insufficient to establish Petitioner's guilt beyond a reasonable doubt and the jury's verdict was against the weight of the evidence because the State utilized accomplice testimony that was not independently corroborated and (2) the trial court erred by refusing to instruct the jury on an affirmative defense to felony-murder. For the reasons set forth below, the habeas petition is denied.

## BACKGROUND

On March 28, 2001, Victor Martinez, a delivery man for a pizzeria in East New York, Brooklyn, was shot and killed in the vicinity of Logan Street and Liberty Avenue, shortly after delivering an order to a nearby address. Four people were subsequently arrested in connection with Martinez's murder: Petitioner, Mark Rushion ("Rushion"), Mavis Brown ("Brown"), and Shalina Martin ("Martin"). Petitioner, Rushion and Brown were charged with one count of murder in the second degree based on a felony murder theory (N.Y. Penal Law § 125.25(3)), and

1

lesser offenses.[1] Rushion was charged with an additional count of murder in the first degree. Petitioner, Rushion, and Brown were tried before the Honorable Plummer E. Lott and three separate juries.

Martin was the only eyewitness to testify at trial regarding the incident involving Martinez's murder. Martin testified that on the night of March 28, 2001, she was smoking marijuana in Petitioner's car with Petitioner, Brown and Rushion. Trial Transcript ("Tr.") at 765:16-20. They had been smoking marijuana for approximately four hours when, shortly after midnight, Brown mentioned that she was hungry. *Id.* at 758:25-768:5. Petitioner then exited his car, opened the trunk, and returned with a gun. *Id.* at 766:13-768:5. According to Martin, Petitioner stated that "before the night was out, he was going to shoot [the gun] at least once, even if it was through the sun roof." *Id.* at 768:11-14.

Rushion observed Victor Martinez shortly after he completed his delivery and told Brown and Martin to rob him. *Id.* at 766:1-8. Brown and Martin exited the vehicle, ran around the corner, and assaulted Martinez. *Id.* at 771:6-15. Rushion remained in the passenger seat as Petitioner drove around the corner and towards the women struggling with Martinez. *Id.* at 771:5-6. After Rushion observed Martin fall to the ground, he exited the vehicle and held Martinez at gunpoint with Petitioner's gun. *Id.* at 771:16-25. Martin removed Martinez's wallet from his pocket. *Id.* at 772:7-15. Rushion then said he "was going to shoot [Martinez] because he saw our faces" and shot Martinez in the head, killing him. *Id.* at 772:16-773:12.

Rushion, Brown, and Martin returned to Petitioner's car. *Id.* Martin handed Martinez's wallet to Petitioner. *Id.* at 773:20-774:5. Petitioner warned the other three to deny any

---

[1] Although it is unclear whether Martin was also charged with these offenses, Martin pleaded guilty to robbery and was sentenced to ten years imprisonment in exchange for her cooperation and agreement to testify for the prosecution against Petitioner, Rushion, and Brown.

2

involvement in the robbery and murder if questioned by the police, stating "if we was [sic] to get caught by the police, tell them we don't know nothing [sic]." *Id.* Petitioner then drove the other three to a restaurant where he and Rushion purchased food with the proceeds of the robbery for the four of them to eat in Petitioner's car. *Id.* at 774:14-775:10. Later that night, Petitioner gave the gun to a person named "Low" in front of Brown's house. *Id.* at 776:15-777:5.

Petitioner was arrested on April 3, 2001. *Id.* at 179:22-24. Petitioner provided an oral statement to Detective Warren Bond, who reduced the statement to writing. *Id.* at 612:20-613:5. After Detective Bond recorded Petitioner's statement, he submitted the recording to Petitioner for his review. *Id.* at 613:10-14. He had Petitioner sign it and write the date and time on it. *Id.* In that statement, Petitioner admitted that he was present with Martin, Brown, and Rushion at the time and place of the robbery and murder. *Id.* at 614:21-617:9. He further confirmed that the four of them had been smoking marijuana and that, at some point, Martin and Brown exited the vehicle. *Id.* at 615:3-9. He also admitted that he drove Rushion to the location where the women were struggling with Martinez. *Id.* at 615:14-616:2.

However, Petitioner denied any involvement in the planning or commission of the robbery and killing of Victor Martinez. *Id.* at 615:2-616:5. Petitioner claimed he did not produce a gun, did not know Rushion had a gun, and did not share in the proceeds of the robbery. *Id.* at 616:3-10. He claimed that "[the murder] was not planned" and that Rushion shot Martinez accidentally while using the gun to defend Martin and Brown. *Id.* at 616:16-20. While Petitioner admitted that he drove the other three away from the scene, he explained that he was "scared . . . confused . . . and [didn't] know[] what to do." *Id.* at 615:2-616:5. Several times during his statement, Petitioner stated that "he was in the wrong place at the wrong time." *Id.* at 616:12-617:4.

3

Shortly after Petitioner provided this written statement to Detective Bond, he gave a similar videotaped statement to a Kings County Assistant District Attorney. *Id.* at 624:18-627:8. Although Petitioner did not testify at his trial, the prosecution introduced both the written statement and videotaped statement.

After the People rested, Petitioner's counsel moved for a trial order of dismissal on the ground that the evidence was legally insufficient to support the charges in the indictment. *Id.* at 898:20-899:18. Although defense counsel did not mention New York's accomplice-testimony rule, which requires independent corroboration of an accomplice's testimony (*see* N.Y. Crim. Proc. § 60.22(1)), Justice Lott apparently considered the issue of whether Martin's testimony was sufficiently corroborated. Justice Lott found that the prosecution had made out a "prima facie case" and that the accomplice-corroboration rule had been satisfied, concluding that the evidence included Petitioner's "admission plus an accomplice's testimony that the jury could accept as corroborated." *Id.* at 899:24-900:1.

At the charge conference, Justice Lott refused Petitioner's request to instruct the jury with the "non-slayer" affirmative defense to felony murder. *See* N.Y. Penal Law §125.25(3). Justice Lott found that the "non-slayer" affirmative defense was inconsistent with Petitioner's claim that he had not been involved in the robbery, saying, "to give the affirmative defense would be a tacet [sic] admission that he did something but that he wasn't a homicidal actor and he didn't think that nobody [sic] was going to get hurt." *Id.* at 1051:10-13. A jury found Petitioner guilty of murder in the second degree and on May 7, 2003, he was sentenced to an indeterminate term of twenty-five years to life imprisonment.

On appeal, Petitioner argued that the evidence presented at trial was legally insufficient to establish guilt beyond a reasonable doubt and the verdict was against the weight of the evidence

because Martin's testimony was not adequately corroborated. Petitioner also argued that he was entitled to a jury instruction for the "non-slayer" affirmative defense to felony murder. The Supreme Court of the State of New York, Appellate Division, Second Department, affirmed the trial court's judgment on August 15, 2005. *See People v. Nylander*, 799 N.Y.S.2d 811 (N.Y. App. Div. 2005). The Appellate Division found Petitioner's legal insufficiency claim procedurally defaulted because defense counsel failed to adhere to New York's contemporaneous objection rule at trial. *Id.* at 811. The Appellate Division further ruled that even if the issue had been properly preserved, viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence to establish guilt beyond a reasonable doubt. *Id.* The court also held that no reasonable view of the evidence warranted a jury instruction on the affirmative defense to felony murder and, using its factual review power, held that the jury's verdict was not against the weight of the evidence. *Id.*

On October 27, 2005, the New York Court of Appeals denied leave to appeal. *People v. Nylander*, 806 N.Y.S.2d 175 (N.Y. 2005). As Petitioner did not pursue his appeal to the United States Supreme Court, the judgment of conviction became final on January 25, 2006, when the ninety-day period to seek a writ of certiorari from the United States Supreme Court expired. *See Warren v. Garvin*, 219 F.3d 111, 112 (2d Cir. 2000).

Petitioner filed a petition for a writ of habeas corpus on January 24, 2007, arguing (1) the evidence was legally insufficient to establish guilt beyond a reasonable doubt and the verdict was against the weight of the evidence because the prosecution utilized uncorroborated accomplice testimony and (2) the trial court improperly refused to instruct the jury on the "non-slayer" affirmative defense to felony murder. The Court addresses both Petitioner's arguments and Respondent's responses in detail below.

## DISCUSSION

### I. Standard of Habeas Review

Pursuant to 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a writ of habeas corpus "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(2).

A state court decision is contrary to clearly established federal law if the state court applies a rule that contradicts governing Supreme Court precedent or the state court confronts a set of facts that is materially indistinguishable from a Supreme Court decision and arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision is an "unreasonable application" of federal law if the state court's application of governing Supreme Court precedent is objectively unreasonable. *Id.* at 409, 413; *see also Mask v. McGinnis*, 252 F.3d 85, 88-89 (2d Cir. 2001). An erroneous application of federal law is not necessarily an unreasonable one. *Williams*, 529 U.S. at 410-11. Nevertheless, as interpreted by the Second Circuit, "although [s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence.'" *Mask*, 252 F.3d at 89 (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)).

On habeas review, State court factual determinations are presumed correct, and the petitioner bears the burden of "rebutting the presumption of correctness by clear and convincing

6

evidence." 28 U.S.C. § 2254(e)(1). The Second Circuit has noted that "this presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility." *Shabazz v. Artuz*, 336 F.3d 154, 161 (2d Cir. 2003) (citations omitted).

## II. Corroboration of Accomplice Testimony

### A. Sufficiency of the Evidence

Under New York law, "[a] defendant may not be convicted of any offense upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such an offense." N.Y. Crim. Proc. § 60.22(1). In his first ground for habeas relief, Petitioner principally argues that there was no independent corroboration of his accomplice's testimony and that the evidence presented at trial was therefore legally insufficient to establish Petitioner's guilt beyond a reasonable doubt. *See* N.Y. Crim. Proc. § 60.22(1). In response, Respondent argues that Petitioner's claim should be denied because a claim based on New York's accomplice-corroboration rule (1) is not cognizable for federal habeas review, (2) is procedurally barred because his conviction rests on an independent and adequate state law ground, and (3) fails on the merits.

The Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crimes with which he is charged. *See Fiore v. White*, 531 U.S. 225, 228-29 (2001) (per curiam); *Jackson v. Virginia*, 443 U.S. 307, 315 (1979). A petitioner who challenges a conviction on the sufficiency of the evidence bears a "very heavy burden." *United States v. Quattrone*, 441 F.3d 153, 169 (2d Cir. 2006); *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002). A habeas petitioner claiming that there was insufficient evidence supporting the conviction is entitled to relief under 28 U.S.C. § 2254 only if "upon the record evidence adduced

at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 324; *see also Schlup v. Delo*, 513 U.S. 298, 323 n. 38 (1995). This inquiry "does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993) (emphasis in original). The habeas court is required to consider the evidence in the light most favorable to the prosecution, and draw all inferences in its favor. *Jackson*, 443 U.S. at 319. "When considering the sufficiency of the evidence of a state conviction, '[a] federal court must look to state law to determine the elements of the crime.'" *Ponnapula*, 297 F.3d at 179 (quoting *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir.1999).

1. Claims Based on New York's "Accomplice-Corroboration" Rule Are Foreclosed From Federal Habeas Review

Many district courts have rejected habeas claims based exclusively on New York's accomplice-corroboration rule on the ground that such claims are not cognizable on habeas review. *See Collins v. Artus*, No. 08 Civ. 1936, 2009 WL 2633636, at *8-9 (S.D.N.Y. Aug. 26, 2009); *Martinez v. Phillips*, No. 04 Civ. 8617, 2009 WL 1108515, at *15-16 (S.D.N.Y. Apr. 24, 2009); *Arrington v. Bradt*, No. 08-CV-70, 2009 WL 909841, at *10 (N.D.N.Y. Apr. 2, 2009); *Reid v. Lacey*, No. 91 Civ. 5779, 1992 WL 162988, at *2 (S.D.N.Y. Jun. 28, 1992). Under federal law, there is no absolute rule "preventing convictions on the testimony of accomplices if juries believe them." *Caminetti v. United States*, 242 U.S. 470, 495 (1917). Indeed, "the federal rule is well established that a defendant may be convicted upon uncorroborated testimony of an accomplice." *United States v. Gordon*, 433 F.2d 313, 314 (2d Cir. 1970). Thus, Petitioner's claim is not cognizable on habeas review and it is procedurally barred from review.[2]

---

[2] Respondent also asserts that Petitioner's claim is procedurally barred because his conviction rests on an independent and adequate state law ground, specifically that the Appellate Division

## 2. Petitioner's Legal Sufficiency Claim Fails on the Merits

Even if Petitioner's insufficiency claim was cognizable on habeas review, there was sufficient evidence to corroborate Martin's testimony and to prove Petitioner committed felony murder. "The requirements of New York's corroboration rule are not severe." *Mingo v. Artuz*, 174 F.3d 73, 78 (2d Cir. 1999). "The corroborative evidence need only tend to connect the defendant to the crime; it need not establish all the elements of the offense." *People v. Steinberg*, 584 N.Y.S.2d 770, 774 (1992) (internal quotations and citations omitted). "Seemingly insignificant matters may harmonize with the accomplice's narrative so as to provide the necessary corroboration." *Id.* (internal citations omitted).

In this case, Martin testified that Petitioner retrieved the gun from the trunk of his car, was present for the planning of the robbery, drove Rushion to the location of the robbery, and subsequently drove his accomplices away in his car. Furthermore, Martin testified that she handed the proceeds of the robbery to Petitioner and that Petitioner warned the others to deny any involvement in the robbery/murder if questioned by the police. In his post-arrest statement to police, Petitioner confirmed that he was with Martin, Rushion, and Davis on the night of the robbery/murder and after the women left his car, he drove Rushion to the location of the ongoing robbery. He also confirmed that he drove the other three from the scene after he witnessed Rushion shoot and kill the victim. Viewing the evidence in the manner most favorable to the

---

held that Petitioner did not preserve the issue of corroboration of accomplice testimony for appellate review by timely objection. Although New York's contemporaneous objection rule is an independent and adequate state law ground, *Garvey v. Duncan*, 485 F.3d 709, 715-16 (2d Cir. 2007), it is at least arguable that Justice Lott's express determination of the sufficiency of the corroboration of Martin's testimony preserved the issue. *See Garvey*, 485 F.3d at 714. The Court need not reach this issue since it is well-established that Petitioner's claim is not cognizable for habeas review for the reasons discussed above, and is, in any event, meritless.

Respondent, this Court finds that a rational trier of fact could have found Petitioner's statement was sufficient to corroborate Martin's account. *See Herrera*, 506 U.S. at 402.

"A conviction may be sustained on the basis of the testimony of a single accomplice, so long as that testimony is not incredible on its face and is capable of establishing guilt beyond a reasonable doubt." *United States v. Gordon*, 987 F.2d 902, 906 (2d Cir. 1993). It is well established that "the credibility of witnesses is the province of the jury and [courts] simply cannot replace the jury's credibility determinations with our own." *United States v. James*, 239 F.3d 120, 124 (2d Cir. 2000). Martin's testimony at trial was not patently incredible. Although Petitioner pointed out reasons to question her credibility, the jury was free to believe her version of the events. Thus, Martin's testimony was sufficient to establish Petitioner's guilt.

B. Weight of the Evidence

Petitioner also asserts that he is entitled to habeas relief because his conviction was against the "weight of the evidence." It is well-established that weight of the evidence claims are not cognizable on federal habeas review because they do not present a federal constitutional issue. *See, e.g., Holder v. Perlman*, No. 06 CV 5590, 2009 WL 1491160, at *5 (E.D.N.Y. May 27, 2009); *Taylor v. Poole*, 538 F.Supp. 2d 612, 618 (S.D.N.Y. 2008). "Weight of the evidence" claims stem from N.Y.C.P.L. § 470.15(5), which allows an intermediate appellate court to reverse or modify a conviction where the court determines that the verdict was, in whole or in part, against the weight of the evidence, meaning that the "trier of fact has failed to give the evidence the weight it should be accorded." *See People v. Bleakley*, 515 N.Y.S.2d 761, 763 (N.Y. 1987) (distinguishing weight of the evidence claims from claims based on the legal sufficiency of the evidence). However, federal habeas review is not available to address errors involving state law. *See* 28 U.S.C. 2254(a) ("a district court shall entertain an application for a

writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.").

### III. Trial Court's Refusal to Provide an Affirmative Defense Jury Instruction

As a second ground for habeas relief, Petitioner argues that the trial court violated his due process right to a fair trial by refusing to instruct the jury on the "non-slayer" affirmative defense to felony murder. Respondent asserts that a failure to instruct a jury with respect to an affirmative defense does not raise a federal constitutional claim and cites *Vega v. Walsh*, No. 06 CV 3246, 2007 WL 539143 (E.D.N.Y. Feb. 16, 2007) ("*Vega II*") in support of this proposition. Resp. Br. at 18.

*Vega II* – which relies on the district court's previous decision in the same case, *Vega*, No. 06 CV 3246 (ERK), 2007 WL 812791, at *1 (E.D.N.Y. Jan. 8, 2007) ("*Vega I*") – appears to support this broad proposition. In his § 2254 petition, Vega argued that the State trial judge had erred in failing to charge the jury on the affirmative defense of entrapment pursuant to N.Y. Penal Law § 40.05. Noting that the Supreme Court has held that the entrapment defense "is not of a constitutional dimension," *United States v. Russell*, 411 U.S. 423, 433 (1973), the district court rejected that argument, ruling that questions as to "whether the defense should be available to a defendant and whether the failure to charge the defense is correct, are purely matters of New York State law that are not subject to review in a habeas corpus proceeding." *Vega I*, No. 06 CV 3246 (ERK), 2007 WL 812791, at *1 (E.D.N.Y. Jan. 7, 2007). The district court distinguished *Jackson v. Edwards*, 404 F.3d 612 (2d Cir. 2005), in which the Second Circuit granted habeas relief where a trial judge failed to charge justification, by noting that justification is a defense – not an affirmative defense. *Id.* The district court reasoned:

> [T]he absence of justification is an element of the offense that must be proven beyond a reasonable doubt. Thus, the failure to charge the defense relieves the prosecution of proving an essential element of the offense beyond a reasonable doubt - a violation of the Due Process Clause (unless the error is harmless). Entrapment is a defense of a different nature; it is an affirmative defense, as which the defendant bears the burden of proof by a preponderance of the evidence. *People v. Laietta*, 30 N.Y.2d 68 (1972). Because the defense does "not negate the commission of the crime charged or the existence of any element thereof," *People v. Millard*, 90 A.D.2d 590, 595 (3rd Dep't 1982), there is no basis for holding that the failure to charge the defense, any more than the failure to recognize such a defense, rises to the level of a Due Process Violation.

*Id.* (internal citations omitted).

When Vega applied for a certificate of appealability, however, the district court recognized that there was language in *Jackson* and *Davis v. Strack*, 270 F.3d 111 (2d Cir. 2005), that "seem[ed] to support the argument the petitioner sought to raise on appeal." *Vega II*, 2007 WL 539143, at *2. In *Davis*, as in *Jackson*, the Second Circuit granted habeas relief in a case in which the trial judge refused to charge justification. In that case, the Second Circuit held:

> On the basis of the evidence presented, Davis had a clear right *under New York law* to have the jury consider his defense, and the trial in which he was denied that right was egregiously at odds with the standards of due process propounded by the Supreme Court....

*Davis*, 270 F.3d, at 133 (emphasis added). Citing, but not quoting, this language, the district court granted Vega a certificate of appealability to afford the Second Circuit "the opportunity to clarify the law." *Vega II*, 2007 WL 539143, at *2.

In an opinion issued almost one year after respondent filed his response to the petition in this case, the Second Circuit rejected the district court's approach of distinguishing between defenses and affirmative defenses. Rather, the Second Circuit held "As New York state has allowed for and defined the defense of entrapment, a denial of that defense could result in a

12

violation of a defendant's right to due process where that denial was sufficiently harmful to make the conviction unfair." *Vega v. Walsh*, No. 07-0271, 2007 WL 4426587, at *2 (2d Cir. Dec. 17, 2007) (summary order) (internal quotations and citations omitted). The Second Circuit then applied the three-step analysis enunciated in *Davis*:

> "First, was the . . . charge required as a matter of New York state law? Second, if so, did the failure to give the requested charge violate the standard set out in *Cupp*. Third, if so, was the state court's failure of such a nature that it is remediable by habeas corpus, given the limitations prescribed by 28 U.S.C. § 2254?"

*Davis*, 270 F.3d at 124.

Finding, under the first step, that the entrapment defense was not required as a matter of New York law, the Second Circuit nonetheless affirmed the result in *Vega I*.

In light of the Second Circuit decision in *Vega*, this Court rejects Respondent's argument that the failure to charge the jury on the "non-slayer" affirmative defense can never raise a federal constitutional claim and cannot serve as a basis for federal habeas relief. Rather, in keeping with the Second Circuit's decision, this Court will proceed to analyze Petitioner's second claim under the *Davis* framework.

A. <u>Was a "Non-Slayer" Affirmative Defense Charge Required Under New York Law?</u>

Under the first step of the *Davis* analysis, the Court's role is not to interpret New York's law regarding affirmative defenses, but to determine whether the evidence was sufficient to warrant a charge on that affirmative defense under New York law. *Jackson v. Edwards*, 404 F.3d 612, 621-22 (2d Cir. 2005) (internal quotation omitted). Under New York law, at the time of the relevant acts, a felony murder is committed when a person acting alone or in concert with others commits a "robbery . . . and, in the course of and in the furtherance of such crime . . . he, or another participant, if there be any, causes the death of a person other than one of the

13

participants[.]" N.Y. Penal Law § 125.25(3). Where the defendant was not the only participant in the underlying crime, an affirmative defense to felony murder is available if the defendant can prove by a preponderance of the evidence that he:

> (a) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; and
>
> (b) Was not armed with a deadly weapon, or any instrument, article or substance readily capable of causing death or serious physical injury and of a sort not ordinarily carried in public places by law-abiding persons;
>
> (c) Had no reasonable ground to believe that any other participant was armed with such a weapon, instrument, article or substance; and
>
> (d) Had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury.

*Id.* The burden is on the defendant to establish by a preponderance of the evidence all four prongs of this "non-slayer" affirmative defense. *See Id.*; N.Y. Penal Law § 25.00(2). If the record includes evidence which, viewed in the light most favorable to the defendant and drawing all reasonably permissible inferences in his favor, satisfies the essential elements of an affirmative defense, the charge must be given. *See People v. Steele*, 26 N.Y.2d 526, 529 (N.Y. 1970).

Justice Lott refused to give the jury an instruction for the "non-slayer" defense because Petitioner denied any involvement in the robbery. Justice Lott stated, "[T]o give the affirmative defense would be a tacet [sic] admission that he did something but that he wasn't a homicidal actor and he didn't think that nobody [sic] was going to get hurt." Tr. at 1051:10-13. However, under New York law, "a defendant's entitlement to a charge on a claimed defense is not defeated solely by reason of its inconsistency with some other defense raised or even with the defendant's

outright denial that he was involved in the crime." *People v. Butts*, 72 N.Y.2d 746, 748 (N.Y. 1988). The critical question is "not whether the claimed defense was consistent with the defendant's testimony or with other defenses raised, but whether that defense, viewed separately, was supported by the trial evidence." *Id.* at 751. A jury must be instructed "on all claimed defenses which are supported by a *reasonable* view of the evidence – not by any view of the evidence, however artificial or irrational." *Id.* (emphasis in original).

In his post-arrest statement to the police, Petitioner denied owning or producing any weapon during the robbery or subsequent murder of Martinez, and claimed he did not know Rushion had a gun. Petitioner also denied any involvement in the planning or commission of the robbery or killing of Victor Martinez, and stated he drove the other three away from the scene because he was scared, confused and didn't know what to do. Viewing the evidence in the light most favorable to Petitioner, this Court finds that Petitioner's post-arrest statements may have been sufficient to warrant a charge on the "non-slayer" affirmative defense. Accordingly, this court moves to the second step of the *Davis* analysis.

B. Did the Denial of an Instruction Required by
   New York State Law Result in a Denial of Due Process?

The question to be determined at the second stage of the three-part inquiry prescribed in *Davis* is whether the trial court's refusal to give the requested instruction "so infected the entire trial that the resulting conviction violates due process." *Cupp*, 414 U.S. at 147. This occurs when the denial of an instruction is "sufficiently harmful to make the conviction unfair." *Jackson*, 404 F.3d at 624 (quoting *Davis*, 270 F.3d at 124).

In determining when the refusal to charge the jury on an affirmative defense is sufficiently harmful to give rise to a federal due process violation, the Second Circuit has focused on the issues of whether the affirmative defense was central to the petitioner's theory at

15

trial and whether that defense was made out by credible evidence. In *Davis*, for example, the petitioner confessed to intentionally shooting the victim, and relied exclusively on a justification defense. *Davis*, 270 F.3d at 131. Moreover, although that defense was made out through the petitioner's testimony at trial, "the jury, by ruling in Davis's favor on the question of extreme emotional disturbance, showed that it generally accepted the truthfulness of Davis's testimony." *Id.* Accordingly, the effect of the trial court's refusal to charge the jury on the justification defense "w[as] to deprive Davis entirely of his defense – on which he had a significant possibility of prevailing – and to ensure his conviction." *Id.* Characterizing these effects as "catastrophic," the *Davis* Court held that the trial court's refusal to instruct the jury on the affirmative defense of justification deprived Davis of his due process right to a fair trial.

Similarly, in *Jackson*, the petitioner confessed to a shooting and relied exclusively on a justification defense. *Jackson*, 404 F.3d 625. The trial court declined to charge the justification defense but the jury, apparently crediting defense counsel's argument that the shooting was accidental, ultimately convicted Jackson of manslaughter rather than murder. *Id.* The Second Circuit found that these facts did not differ from those in *Davis* "in any significant respect," and again stated that denying "a defendant the opportunity to raise a 'highly credible defense' to a charge of homicide is nothing short of a 'catastrophic' error." *Id.* (quoting *Davis*, 270 F.3d at 131-32).

Both *Davis* and *Jackson* contrasted the facts in those cases to the facts in *Blazic v. Henderson*, 900 F.2d 534 (2d Cir. 1990), in which the trial court's failure to give a justification defense was held not to violate due process. In *Blazic*, the petitioner's principal claim was that the fatal shot had been fired accidentally. *Id.* at 536. Indeed, Blazic's trial counsel "initially agreed with the trial court that a justification charge was not warranted," and requested the

justification defense only after reconsidering the issue overnight at the trial court's invitation. *Id.* The jury ultimately convicted Blazic of intentional murder, implicitly rejecting petitioner's testimony that the shooting was accidental. *Id.* at 537, 542-43.

On appeal, the Second Circuit found that a justification charge was warranted under New York law, but opined that the failure to give that charge did not affect the outcome of the trial. *Id.* at 542. The court noted, *inter alia,* that Blazic's testimony "was the only evidence supporting a justification claim," but that the jury "would have had to reject significant aspects of Blazic's account" in order to have convicted him of intentional murder. *Id.* at 543. While the jury theoretically could have accepted the remaining testimony, the Second Circuit "discerned no reasonable view of the evidence derived by parsing his testimony that supported a finding of justification." *Id.* Accordingly, the Second Circuit "perceived no basis to conclude that a jury would have responded differently had the charge been given and, therefore, reject[ed] the contention that the omission of a justification charge 'so infected the entire trial that the resulting conviction violate[d] due process.'" *Id.* (quoting *Cupp*, 414 U.S. at 147).

This case presents facts analogous to *Blazic*. In order to convict Petitioner of felony murder, the jury must have found that Petitioner intended to commit the underlying felony. By convicting Petitioner, the jury implicitly discredited Petitioner's claim that he was not involved in the robbery and credited Martin's account of Petitioner's participation. Here, as in *Blazic*, once the jury discredited Petitioner's account of the incident, there was no reasonable view of the evidence that supported the affirmative defense. Moreover, the failure to charge the affirmative defense did not deprive Petitioner of a credible defense, as it did *Davis*, because Petitioner's principal claim was that he did not share his co-defendants' intent to rob the victim. That issue was presented to the jury, which considered and rejected it. Accordingly, the omission of the

17

"non-slayer" affirmative defense charge did not, under the circumstances of this case, "so infect[] the trial that the resulting conviction violat[ed] due process." *Cupp*, 414 U.S. at 147.

C. Application of 28 U.S.C. § 2254(d)

Since this Court finds that the failure to charge the jury on the "non-slayer" affirmative defense did not violate Petitioner's due process rights, there is no need to consider the third step of the *Davis* analysis.

## CONCLUSION

The application for a writ of habeas corpus is denied, and the petition is dismissed. Because petitioner has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability.

**SO ORDERED.**

/SANDRA L. TOWNES
United States District Judge

Dated: March 29, 2010
Brooklyn, New York